UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| A.M.M., on behalf of S.O.,<br><br>                         Plaintiff,<br><br>        -v-<br><br>KILOLO KIJAKAZI, Acting<br>Commissioner of Social Security,<br>                         Defendant. | 22-CV-2366 (JPO)<br><br>OPINION AND ORDER ADOPTING<br>REPORT AND RECOMMENDATION |

J. PAUL OETKEN, District Judge:

Plaintiff A.M.M.,[1] on behalf of her daughter and minor S.O., brings this action pursuant to 42 U.S.C. § 405(g) against the Acting Commissioner of the Social Security Administration ("SSA"). A.M.M. seeks review of the SSA's final decision denying her daughter's application for child Supplemental Security Income ("SSI"). Before the Court are A.M.M.'s motion for summary judgment (ECF No. 11) and the Commissioner's motion for judgment on the pleadings (ECF No. 14).

Magistrate Judge Gary R. Jones conducted a thorough and careful review and issued a Report and Recommendation on April 10, 2023 (the "R&R" or "Report") concluding that the decision of the Administrative Law Judge (ALJ) denying S.O.'s claim for benefits was free of legal error and supported by substantial evidence. (ECF No. 17.) Judge Jones accordingly recommended that A.M.M.'s motion be denied and that the Commissioner's be granted.

---

[1] Plaintiff's name has been partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

A.M.M. filed objections to the Report on April 24, 2023 (ECF No. 18), and the Commissioner filed a response to A.M.M.'s objections on May 12, 2023 (ECF No. 22).  For the reasons that follow, the Court adopts the Report in its entirety.

## I.      Legal Standard

When reviewing a report and recommendation by a magistrate judge, a district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).  "The Court reviews the Report strictly for clear error where no objection has been made and will make a *de novo* determination regarding those parts of the Report to which objections have been made."  *McDonaugh v. Astrue*, 672 F. Supp. 2d 542, 547 (S.D.N.Y. 2009).  If a party lodges "objections that are merely perfunctory responses argued in an attempt to engage the district court in a rehashing of the same arguments set forth in the original petition," however, the party's objections "will not suffice to invoke *de novo* review of the magistrate's recommendations."  *Id.* (internal quotation marks and citation omitted); *see also Molefe v. KLM Royal Dutch Airlines*, 602 F. Supp. 2d 485, 487 (S.D.N.Y. 2009) (clear error review of a report applies when a party "simply reiterates the original arguments").

Here, A.M.M.'s objections to the Report "simply reiterate[] the original arguments" in her motion for summary judgment and are not "clearly aimed at particular findings in the magistrate judge's proposal," suggesting that the Court should apply clear error review.  *Id.* Still, even if a standard of *de novo* review applied, the Court would adopt the Report in its entirety.  *See, e.g.*, *Tashman v. Kijakazi*, No. 21-CV-0801, 2022 WL 3159318, at *1 (S.D.N.Y. Aug. 8, 2022).

A.M.M. moves for summary judgment under Rule 56(a), under which judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The Commissioner moves for judgment

on the pleadings under Rule 12(c), under which such motion will be granted "if, from the

pleadings, the moving party is entitled to judgment as a matter of law." *Wells Fargo Bank, Nat'l*

*Ass'n v. Davidson Kempner Cap. Mgmt. LLC*, 32 F. Supp. 3d 436, 440-41 (S.D.N.Y. 2014)

(internal quotation marks and citation omitted).

## II.    Discussion

"A district court may set aside the Commissioner's determination that a claimant is not

disabled only if the factual findings are not supported by 'substantial evidence' or if the decision

is based on legal error." *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000) (quoting 42 U.S.C.

§ 405(g)).  Substantial evidence is that which "a reasonable mind might accept as adequate to

support a conclusion." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quoting *Richardson v.*

*Perales*, 402 U.S. 389, 401 (1971)).  A court must accept an ALJ's findings of fact unless "a

reasonable factfinder would have to conclude otherwise." *Brault v. Soc. Sec. Admin., Comm'r*,

683 F.3d 443, 448 (2d Cir. 2012) (per curiam) (emphasis, internal quotation marks, and citation

omitted).

To qualify for SSI, a child under the age of eighteen must have a "medically determinable

physical or mental impairment, which results in marked and severe functional limitations, and

which can be expected to result in death or which has lasted or can be expected to last for a

continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i).  The SSA has

prescribed a three-step analysis to make that determination.  *See* 20 C.F.R. § 416.924; *Pollard v.*

*Halter*, 377 F.3d 183, 189 (2d Cir. 2004).  First, a child is not disabled if she is engaged in work

that is "substantial gainful activity." 20 C.F.R. § 416.924(b).  Second, the ALJ considers

whether the child has a "medically determinable impairment[] that is severe," which is defined as

an impairment that causes "more than minimal functional limitations." *Id.* § 416.924(c).

Finally, if the ALJ finds severe impairments, the ALJ then considers whether they "meet,"

3

"medically equal," or "functionally equal" the severity of a set of criteria for an impairment in a "Listing of Impairments," or if it functionally equals those listings. *Id.* § 416.924(d).

Functional equivalence is to be evaluated through the lens of six "domains": "(i) acquiring and using information; (ii) attending and completing tasks; (iii) interacting and relating with others; (iv) moving about and manipulating objects; (v) caring for oneself; and (vi) health and physical well-being." *Frye ex rel. A.O. v. Astrue*, 485 F. App'x 484, 487 (2d Cir. 2012) (summary order) (citing 20 C.F.R. § 416.926a(b)(1)). An impairment or combination of impairments functionally equals a listed impairment if they result in "marked" limitations in two domains of functioning, or an "extreme" limitation in one domain. 20 C.F.R. § 416.926a(a).

A.M.M. makes two objections to the Report. First, she objects to the Report's conclusion that there was substantial evidence supporting the ALJ's conclusion that S.O.'s impairments did not "functionally equal" a listing. (ECF No. 18 at 4-9.) Second, A.M.M. argues that the Report erroneously concluded that there was substantial evidence supporting the ALJ's finding that S.O.'s impairments did not "meet" or "medically equal" Listing 112.15. (ECF No. 18 at 9-11.) The Court addresses each objection in turn.

### A.      "Functionally Equal"

A.M.M. argues that the ALJ erred by concluding that S.O. did not have a marked limitation in the areas of acquiring and using information, attending and completing tasks, and interacting with and relating to others. As Magistrate Judge Jones's Report explains, however, there was substantial evidence in the record supporting the ALJ's conclusions in each of those three domains. (R&R at 7-14.)

### 1.      Acquiring and Using Information

The ALJ assessed a less than marked limitation in the domain of acquiring and using information. (ECF No. 10 ("Tr.") at 28.) To support her objection, A.M.M. cites the fact that

S.O. had to repeat fourth grade twice and is in special education (*see* Tr. at 29), and that a report by one of S.O.'s teachers describes S.O. as having a "serious problem" with expressing ideas in written form, as well as an "obvious problem" with comprehending and doing math problems, understanding and participating in class discussions, providing organized oral explanations and adequate descriptions, learning new material, recalling and applying previously learned material, and applying problem-solving skills in class discussions (Tr. at 208).

The ALJ acknowledged that evidence and simply chose to weigh other evidence in the record more heavily.  (Tr. at 29-30.)  For example, the same teacher did not identify any "very serious problems" with S.O.'s ability to acquire or use information.  (Tr. at 208.)  Treating physician Dr. Cay White reported that S.O. had "no intellectual deficit" (Tr. at 504), while social worker Eric Berman explained that S.O. is "able to accomplish tasks" and rated her as having achieved an age-appropriate level of independence and self-direction (Tr. at 351).  Two non-examining review consultants also assessed S.O. as having less than marked limitation in this domain.  (Tr. at 82, 93.)  After reviewing treatment records from S.O.'s providers, the ALJ found that those records "show considerable abilities on mental status examination," such as "appropriate thought process," "intact memory," and "fair judgment/insight."  (Tr. at 30 (citing Tr. at 397, 460, 471, 479, 487, 495).)  Thus, as Magistrate Judge Jones explains, A.M.M. has not shown that no reasonable factfinder could have reached the ALJ's conclusions based on the evidence in the record.  (R&R at 8-10.)

### 2.    Attending and Completing Tasks

The ALJ also assessed a less than marked limitation in the domain of attending and completing tasks.  (Tr. at 28.)  A.M.M. cites the same teacher's report, which rates S.O. as having a "very serious problem" with focusing long enough to finish an assigned activity or task, refocusing to a task when necessary, and working without distracting herself or others (Tr. at

210), as well as treatment notes that S.O. has difficulty managing her impulses, not getting easily distracted, completing schoolwork, and concentrating in class (Tr. at 302-321).

Again, despite recognizing some impairment in S.O.'s ability in this domain, the ALJ also cited other evidence in the record that supports a finding of a less than marked limitation. For example, as the ALJ notes, S.O.'s teacher also rated S.O. as having "no problem" or only a "slight problem" with paying attention when spoken to directly, carrying out multi-step instructions, waiting to take turns, and organizing her own things or school materials.  (Tr. at 30 (citing Tr. at 210).)   The ALJ also cited treatment records showing that S.O. exhibited "fair attention/concentration," among other traits.  (Tr. at 31 (citing Tr. at 397, 460, 471, 479, 487, 495).)  Social worker Berman observed that S.O.'s ability to accomplish tasks is "within normal limits" for her age (Tr. at 406), and two non-examining review consultants concluded that S.O. has no limitation and less than marked limitation in this domain, respectively (Tr. at 82, 93).  The Court agrees with and adopts the Report's conclusion that the ALJ's finding on the domain of attending and completing tasks was supported by substantial evidence.  (R&R at 10-13.)

### 3.    Interacting and Relating with Others

Finally, as to interacting and relating with others, the ALJ similarly assessed that S.O. has a less than marked limitation.  (Tr. at 28.)  A.M.M. cites the teacher's report characterizing S.O. as having a "very serious problem" with seeking attention appropriately, expressing anger appropriately, asking permission appropriately, following rules, and respecting and obeying adults in authority.  (Tr. at 211.)  That same report, however, rates S.O. as having "no problem" or only a "slight problem" with playing cooperatively with other children, making and keeping friends, using language appropriate to the situation and listener, and introducing and maintaining relevant and appropriate topics of conversation, among other skills.  (Tr. at 211.)  While A.M.M. cites records reflecting an impaired relationship between S.O. and her siblings (Tr. at 503), the

6

ALJ noted that those same records also state that S.O. is "able to form [and] maintain age appropriate relationships" (Tr. at 31 (citing Tr. at 504)), and that S.O.'s relationship with her siblings is improving (Tr. at 29 (citing Tr. at 503)).  More broadly, treatment notes describe S.O. as friendly, cooperative, and pleasant (Tr. at 396, 459, 470, 478, 486, 494), with social worker Berman describing S.O. as "very pleasant and easy to talk to and get along with" (Tr. at 350).  Two non-examining review consultants also concluded that S.O. has less than marked limitation in this domain.  (Tr. at 82, 93.)  The Court therefore adopts the Report's conclusion that the ALJ's finding on this domain was supported by substantial evidence.  (R&R at 13-14.)

> **B.**    **"Meet" or "Medically Equal"**

A.M.M. next argues that there was insufficient evidence in the record to support the ALJ's conclusion that S.O.'s impairments do not meet or medically equal the criteria of Listing 112.15, "Trauma- and stressor-related disorders."  To establish that S.O.'s impairment met Listing 112.15, A.M.M. must show that S.O. satisfies both Paragraphs (A) and (B), or both Paragraphs (A) and (C), of the listing.  *See* 20 C.F.R., Part 404, Subpart P, App. 1, § 112.15.

Paragraphs (A), (B), and (C) each contain multiple requirements.  For example, Paragraph (A) requires medical documentation of posttraumatic stress disorder, characterized by all of the following: (a) exposure to actual or threatened death, serious injury, or violence, (b) subsequent involuntary re-experiencing of the traumatic event, (c) avoidance of external reminders of the event, (d) disturbance in mood and behavior, and (e) increases in arousal and reactivity.  *Id.*  Or, one must have medical documentation of reactive attachment disorder, characterized by at least two of the following: (a) rarely seeks comfort when distressed, (b) rarely responds to comfort when distressed, or (c) episodes of unexplained emotional distress.  *Id.*

There was substantial evidence in the record to support the ALJ's finding that S.O.'s impairments did not meet or medically equal the criteria of a Listed Impairment.  "For a claimant

to show that his impairment matches a listing, it must meet *all* of the specified medical criteria," and an "impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).

The ALJ concluded that S.O. did not meet the criteria in either Paragraphs (B) or (C), at least one of which is necessary for a finding that one's impairments meet or medically equal a listing.  (Tr. at 27.)  Paragraph (B) requires that a claimant have "[e]xtreme limitation of one, or marked limitation of two," of four "areas of mental functioning": (1) understanding, remembering, or applying information, (2) interacting with others, (3) concentrating, persisting, or maintaining pace, and (4) adapting or managing oneself.  20 C.F.R., Part 404, Subpart P, App. 1, § 112.15(B).  The ALJ concluded that S.O. did not meet Paragraph (B) because she has only a moderate (and not marked or severe) limitation in all four of those areas.

In objecting to the ALJ's conclusion on Paragraph (B), A.M.M. largely repeats reasoning that she also raises in the functional equivalence context, which the Court has already addressed. (*See* ECF No. 18 at 10-11.)  There is also substantial evidence in the record to support the ALJ's conclusions on each area of mental functioning.  On understanding, remembering, and applying information, S.O.'s teacher did not identify any "very serious problems" in her ability to acquire and use information (Tr. at 208), A.M.M. herself described S.O. as having done "fairly well academically" (Tr. at 355), and records from S.O.'s providers observe that S.O. has appropriate thought process and intact memory (*see* Tr. at 30).  On interacting with others, S.O.'s teacher rated S.O. as having no or only "slight problems" with skills such as maintaining relevant and appropriate topics of conversation and making and keeping friends (Tr. at 211), and providers describe S.O. as friendly and easy to get along with (*see, e.g.*, Tr. at 350, 396).  On concentrating, persisting, or maintaining pace, S.O.'s teacher rated her as having no problem

carrying out single-step instructions and having only a "slight problem" with carrying out multi-step instructions (Tr. at 210), and provider notes describe S.O. as having fair attention and concentration and fair judgment and insight (*see* Tr. at 30).  Finally, on adapting or managing oneself, A.M.M. indicated that S.O.'s impairments do not affect her ability to "help . . . herself and cooperate with others in taking care of personal needs" (Tr. at 201), and S.O.'s teacher rated her as having no problems with taking care of her personal hygiene, caring for her physical needs, and avoiding dangerous circumstances (Tr. at 214).  Accordingly, A.M.M. has not shown that the record lacks substantial evidence for the ALJ's conclusion on Paragraph (B).

The same is true of the ALJ's conclusion that S.O. does not satisfy Paragraph (C).  Paragraph (C) requires a showing that S.O.'s mental disorder is "serious and persistent," and that there is evidence of both "[m]edical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of your mental disorder," as well as "[m]arginal adjustment," defined as "minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life."  20 C.F.R., Part 404, Subpart P, App. 1, § 112.15(C).  The ALJ concluded that the record did not contain evidence of either a highly structured environment or marginal adjustment, both of which are required by Paragraph (C).  (Tr. at 27.)  The Court agrees with that assessment, and A.M.M. does not point to any evidence to the contrary.

### III.    Conclusion

For the foregoing reasons, the Report and Recommendation (ECF No. 17) is hereby ADOPTED and A.M.M.'s objections (ECF No. 18) are OVERRULED.  A.M.M.'s motion for summary judgment (ECF No. 11) is hereby DENIED, and Kijakazi's motion for judgment on the pleadings (ECF No. 14) is GRANTED.  The Commissioner's decision is affirmed.

The Clerk of Court is directed to close the motions at Docket Numbers 11 and 14, and to close this case.

SO ORDERED.

Dated: September 29, 2023
       New York, New York

_____
                          J. PAUL OETKEN
                   United States District Judge